IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

**STATE OF TENNESSEE v. RICKEY LEE BROWN, JR.**

**Direct Appeal from the Criminal Court for Sumner County**
**No. 100-2014     Dee David Gay, Judge**

---

**No. M2015-01730-CCA-R3-CD – Filed September 16, 2016**

---

The appellant, Rickey Lee Brown, Jr., was convicted in the Sumner County Criminal Court of driving under the influence (DUI); DUI per se; DUI, fourth offense; and driving on a revoked license. The trial court merged the first three offenses and sentenced the appellant as a Range II, multiple offender to four years for DUI, fourth offense. The trial court sentenced him to six months in confinement to be served at 75% release eligibility for driving on a revoked license and ordered that the four-year sentence be served consecutively to the six-month sentence. On appeal, the appellant contends that his four-year sentence is excessive. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Jon David Rogers, Hendersonville, Tennessee, for the appellant, Rickey Lee Brown, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Sidney Preston, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The appellant does not contest the sufficiency of the evidence. Taken in the light most favorable to the State, the evidence shows that on the afternoon of October 12, 2013, Deputy Brandon Carter of the Sumner County Sheriff's Department was traveling on Highway 109 from Portland to Gallatin when he saw a red pickup truck being driven by the appellant. The appellant was not wearing a seatbelt, so Deputy Carter decided to stop him. The officer began following the truck to make the stop, observed the truck cross the double yellow line, and decided "hold off" on the stop in order to watch the truck. The truck crossed the double yellow line several more times, so Deputy Carter activated his patrol car's emergency equipment and stopped the appellant for suspicion of DUI and the seatbelt violation.

When Deputy Carter came into contact with the appellant, the appellant smelled of alcohol but denied he had been drinking. Deputy Carter asked a passenger in the truck if the appellant had been drinking alcohol, and the passenger said the appellant had consumed "two or three" that morning. The officer learned from dispatch that the appellant's license had been revoked and asked that the appellant perform field sobriety tests. The appellant agreed, so Deputy Carter administered the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test. Based on the appellant's performance on the tests, Deputy Carter arrested him for DUI and driving on a revoked license. After the arrest, Deputy Carter inspected the pickup truck and saw an open, twenty-four-ounce beer can on the driver's floorboard. He read an implied consent form to the appellant and requested that the appellant submit to a blood alcohol test. The appellant agreed, so Deputy Carter transported him to a medical center for the blood draw. Analysis on the blood showed that it had an ethyl alcohol content of 0.12 gram percent, which was above the legal limit of .08 gram percent.

The jury convicted the appellant as charged of DUI, DUI per se, and driving on a revoked license. The State then presented evidence of three prior DUI convictions, and the jury convicted him of DUI, fourth offense.[1]

At the sentencing hearing, no witnesses testified for the State, but the State introduced the appellant's presentence report into evidence. According to the report, the then thirty-seven-year-old appellant dropped out of high school after the eleventh grade but obtained his GED. In the report, the appellant described his physical health as "good" and his mental health as "excellent." He stated that he had been consuming alcohol since he was sixteen years old and that he did not drink often, just on weekends. The appellant also stated that he tried marijuana one time when he was a teenager but that he did not use any other illegal drugs. The report showed that the appellant worked for

---

[1] We note that on page 2 of the appellant's brief, counsel states incorrectly that the appellant was convicted of aggravated robbery. We also note that the State's brief provides few facts underlying the appellant's convictions that were relevant to sentencing. See Tenn. R. App. P. 27(b).

Brown's Insulation from January to February 2013, for Unipres from February to May 2013, and for a landscaping company from July to October 2013. The report showed no other employment. The appellant's prior criminal history spanned almost six pages of the report and included numerous misdemeanor convictions for domestic assault and assault and convictions of resisting arrest, public intoxication, evading arrest, violation of the open container law, driving on a revoked license, and harassment. The State also introduced into evidence two certified judgments of conviction for aggravated assault.

Sue Morrow, a probation officer with the Tennessee Department of Correction (TDOC), testified for the appellant that she prepared his presentence report. She said that if the trial court granted probation, the appellant would need assistance obtaining employment. He also needed some social skills, particularly in making decisions about consuming alcohol. She stated that the appellant's alcohol use "needs to be addressed" and suggested that he take classes offered through the TDOC. Defense counsel asked if Ms. Morrow thought the appellant could complete probation successfully, and she stated that he "has had several other opportunities of probationary sentences that he was not successful at." She stated that if the appellant was willing to participate in the programs she suggested and "change his ways," he possibly could complete probation.

On cross-examination, Ms. Morrow acknowledged that the appellant had ten to eleven prior convictions for domestic assault and assault. The appellant told her that he stopped working for Unipres because he was working twelve-hour shifts, seven days per week, which was too much. He lost his landscaping job due to the charges in this case. Ms. Morrow stated that she did not think the appellant could complete probation and that he was "going to have to be on a very tight leash." Although he had numerous alcohol-related convictions, the appellant did not think he had an alcohol problem. To Ms. Morrow's knowledge, he had never received or sought treatment for his alcohol addiction. He also was not taking advantage of Alcohol Anonymous (AA) in jail.

The appellant acknowledged that he had a problem with alcohol. He said he was currently incarcerated but was not attending AA because "[t]hey very seldom come and get you for AA here." He acknowledged that he would attend alcohol treatment if granted probation. He also acknowledged that he had hit "rock bottom," which was why he was finally seeking treatment. He said that if released from confinement, he planned to seek employment immediately.

On cross-examination, the appellant acknowledged that he had an extensive criminal history and that he was first charged with DUI when he was only nineteen years old. His two prior convictions for aggravated assault were committed against his ex-wife. He denied ever hitting her and said they were just arguing. The appellant

acknowledged that he was continually charged with crimes from the time he was nineteen to thirty-three years old and that he obtained his third DUI conviction in 2007.

The appellant testified that he worked for Brown Insulation, his father's company, but had to change jobs when business slowed and he did not have enough work. The appellant said he had known for at least seven years that he had an alcohol problem. He said the trial court should place him on supervised probation because "I need to start doing something. . . . I want to do something with my life, and I think it's about time to start." Upon being questioned by the court, the appellant denied being the driver of the pickup truck stopped by Deputy Carter.

The trial court described the appellant's criminal record as "[u]nbelievable" and applied enhancement factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," to his sentence for DUI, fourth offense. Tenn. Code Ann. § 40-35-114(1). The court also applied factor (10), that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," noting that the appellant was crossing the centerline and could have hit an oncoming car. Tenn. Code Ann. § 40-35-114(10). The court found no mitigating factors applicable. Regarding the appellant's potential for rehabilitation, the trial court stated that "I don't see much there at all hope-wise" and that the court was "bother[ed]" by the appellant's failure to take responsibility in this case.

The trial court merged the DUI convictions into a single conviction for DUI, fourth offense, a Class E felony. The court found that the appellant was a Range II, multiple offender based upon his two prior felony convictions for aggravated assault. Thus, his range of punishment was two to four years. See Tenn. Code Ann. § 40-35-112(b)(5). The trial court sentenced him to four years. For the conviction of driving on a revoked license, a Class B misdemeanor, the trial court sentenced him to six months to be served at seventy-five percent release eligibility. Due to the appellant's extensive criminal activity, the trial court ordered that he serve the four-year sentence consecutively to the six-month sentence. See Tenn. Crim. App. § 40-35-115(b)(2). The trial court denied the appellant's request for probation, finding that confinement was necessary to protect society by restraining a defendant with a long history of criminal conduct; that confinement was necessary to avoid depreciating the seriousness of the offense; and that measures less restrictive than confinement had been frequently applied unsuccessfully to the appellant. See Tenn. Code Ann. § 40-35-103(c)(1).

## II. Analysis

On appeal, the appellant contends that the trial court erred by sentencing him to four years, the maximum punishment in the range, for DUI, fourth offense. He contends that the trial court should have mitigated his sentenced based upon his alcohol problem, his having no history of violent crimes, the fact that his criminal record was based almost exclusively on alcohol-related crimes, and his desire for help to overcome his addiction. The State argues that the trial court properly sentenced the appellant. We agree with the State.

The appellant states that we should reduce his sentence based upon our de novo review of the record. However, length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only.  See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008).  Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion."  Carter, 254 S.W.3d at 345.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'"  Id. at 343.  Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act."  Id. at 346.

Here, the trial court applied two enhancement factors, and the appellant does not contest the applicability of those factors.  In our view, the appellant's criminal history alone justifies enhancing his sentence to the maximum punishment in the range.  As to his suggested mitigating factors, none of them are an enumerated factor but could fall under the catch-all provision of the statute.  See Tenn. Code Ann. § 40-35-113(13).  However, given the appellant's repeated convictions for aggravated assault, domestic assault, and assault; the fact that he continues to deny assaulting his ex-wife; and his failure to seek treatment for his alcohol addiction, despite numerous prior convictions related to alcohol and knowing for at least seven years that he had an alcohol problem, the trial court justifiably refused to mitigate his sentence.  Thus, we conclude that the trial court properly sentenced the appellant to four years for DUI, fourth offense.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 6 -